IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| LEONARD YOUNG, | ) | |
| | ) | Civil Action No. 2: 19-cv-000401 |
| Plaintiff, | ) | |
| | ) | United States Magistrate Judge |
| v. | ) | Cynthia Reed Eddy |
| | ) | |
| DOCTOR GAIL KUBRIN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Pending before the Court is the Motion for Summary Judgment, with brief in support, filed by Defendant Doctor Gail Kubrin (ECF Nos. 120 and 121), the counseled Brief in opposition filed by Plaintiff (ECF No. 122), and the Reply Brief filed by Defendant Kubrin (ECF No. 125). The issues are fully briefed and the factual record thoroughly developed. (ECF Nos. 123, 124,[2] 125, and 127). After carefully considering the motion, the material in support and opposition to it, the memoranda of the parties, the relevant case law, and the record as a whole, the motion for summary judgment will be denied and Defendant's request to dismiss Plaintiff's

---

[1]     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343. The parties have consented to the jurisdiction of a Untied States Magistrate Judge to conduct all proceedings in this case, including the entry of judgment, as authorized by 28 U.S.C. § 636. (ECF Nos. 24 and 25).

[2]     Defendant filed an untimely Concise Statement of Material Facts in support of her motion for summary judgment. (ECF No. 124). The Court directed Defendant to file a motion for leave under Federal Rule of Civil Procedure 6(b) and allowed Plaintiff seven days to respond to the motion. (ECF No. 128). After reviewing the motion (ECF No. 129), the arguments of all counsel, and the factors set forth in *Pioneer Inv. Servs. Co v. Brunswick Assocs.*, 507 U.S. 380, 385 (1993), the Court found that Defendant had demonstrated that the failure to file a timely Concise Statement was due to excusable neglect and that Plaintiff had not been prejudiced by the late filing as he had filed a response to Defendant's Concise Statement. (ECF No. 132).

punitive damages claim also will be denied.  Defendant's request, without objection, to dismiss Plaintiff's First Amendment claim and claim for specific compensatory damages will be granted.

## I.      Background

Plaintiff, Leonard Young (Young), who is currently in state custody, commenced this civil rights action, while he was a pretrial detainee at the Allegheny County Jail (ACJ).[3]  He brings this case pursuant to 42 U.S.C. § 1983 and Pennsylvania state law against two Defendants, Allegheny Health Network (AHN) and Dr. Gail Kubrin (Dr. Kubrin).  This action arises out of Young's placement in therapeutic restraints while he was placed in the mental health unit of ACJ.  Prior to service, Young *pro se* amended his complaint as a matter of course. (ECF No. 10).  The verified Amended Complaint remains Young's operative pleading.  Young raises three claims in the Amended Complaint:

> (1)  A Fourteenth Amendment claim alleging that Dr. Kubrin was deliberately indifference to his serious medical needs;
>
> (2)  A First Amendment claim that Dr. Kubrin placed him in restraints as a form a punishment or retaliation;[4] and
>
> (3)  A state law claim for intentional infliction of emotional distress.

Amended Complaint, ECF No. 10.

On July 31, 2019, Defendants filed a motion to dismiss the Amended Complaint.  (ECF No. 26).  In response, Young voluntarily dismissed Defendant AHN from the case based on its lack of personal involvement. (ECF No. 29). On October 2, 2019, the case was placed on administrative suspense pending appointment of counsel.  (ECF No. 40).  After receiving three

---

[3]      The summary judgment record reflects that Young was booked into ACJ on 9/2/2018 and released from ACJ on 12/6/2019.  ECF No. 123 at pgs. 4, 6, 7, and 13.  For ease of reference, the Court uses the page numbers from the CM/ECF header.

[4]      In his brief in opposition to summary judgment, Young consents to having his First Amendment claim dismissed.  (ECF No. 122 at p. 20).

Declinations of Request to represent Plaintiff (Sealed Doc. Nos. 50, 51, and 54), the Court reopened the case on January 21, 2021.

On February 19, 2021, the Court denied the pending motion to dismiss as to Dr. Kubrin and the case proceeded to discovery.  (ECF No. 61).  On October 13, 2021, Attorney John F. Mizner entered his appearance on behalf of Young.  (ECF No. 109).

After the close of discovery, Dr. Kubrin filed this motion for summary judgment.  Young, through counsel, argues that summary judgment should not be granted because genuine issues of material facts are in dispute.  The motion is ripe for disposition.

## II.    Standard of Review

The standard for assessing a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled.   A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 250.   A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome under applicable substantive law. *Anderson*, 477 U.S. at 248. An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 257.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support its claim. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact. *See Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.   Relevant Facts

The events giving rise to this case occurred from September 2018 to November 2018, when Young was confined in the mental health unit at ACJ. Dr. Kubrin was a psychiatrist employed by Allegheny Health Network and working at ACJ during the relevant time period. The claims arise in an extraordinary factual setting.

Young has been in and out of jail most of his adult life. He "has an extensive disciplinary history and history of mental illness. Since childhood, Young has been diagnosed with various forms of mental illness, including bipolar disorder and schizoaffective disorder." *Young v. Martin*, 801 F.3d 172, 181-82 (3d Cir. 2015). He has been diagnosed with PTSD, impulse control disorder, narcissistic disorder, and has been described as having antisocial personality disorder. Dr. Kubrin in her deposition described Young's behavioral and mental illness as "serious." Depo. of Kubrin, at p. 27, lines 23-25.

While incarcerated at ACJ, Young made statements that he intended to commit suicide. Additionally, he repeatedly swallowed dangerous objects, such as glass, screws, batteries, and his inhaler.  Young was sent to the hospital on numerous occasions after ingesting dangerous objects.  He testified in his deposition that he ingested dangerous objects not to kill himself, but to cause problems and protest ACJ's lack of medical care.  Specifically, he testified that he was protesting the retaliation against him for complaining about the mental health staff's failure to provide him treatment.  He explained,

> [P]art of my political protest was to try to receive actual mental health treatment and to stop them from housing me in a cell that was walled, glass enclosed with the air vent blowing to freezing me out so bad that my bones were actually cold. Like, I felt it all the way to my bones.

Depo. of Young, at p. 26, lines 6-11. The medical record of evidence reflects that Dr. Kubrin ordered Young to be subjected to five-point "therapeutic restraints" on a number of occasions.

The parties largely agree on the facts underlying the matter, but disagree on the proper interpretation of those facts.  Specifically, the parties dispute the reasons why Young was ordered to be placed in therapeutic restraints. Dr. Kubrin argues that there was a legitimate purpose for placing Young in therapeutic restraints – to keep him safe from future self-harm. Young responds that being placed in therapeutic restraints amounted to punishment prior to adjudication of guilt because Dr. Kubrin was deliberately indifferent to his serious medical needs by ordering that he be placed in restraints, often for extended periods of time.

## IV.  Analysis

### 1.  42 U.S.C. § 1983

Section 1983 of the Civil Rights Act provides:

Every person who, under the color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the

> jurisdiction thereof to the deprivation of any rights, privileges, immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.   Thus, to state a claim for relief under this provision, a plaintiff must demonstrate that (1) the alleged misconduct was committed by a person acting under color of state law; and (2) that such conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### a. State Action

The parties agree that Dr. Kubrin was acting under the color of state law at all relevant times.

### b. Fourteenth Amendment

The parties also agree that Young was a pretrial detainee at the time of the events complained of in the Amended Complaint.   The Due Process Clause requires the government to provide appropriate medical care to pretrial detainees. *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983). A pretrial detainee's claim of inadequate medical care arises under the Fourteenth Amendment, rather than the Eighth Amendment. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003).   "The applicable constitutional protection is the Due Process of the Fourteenth Amendment . . . because the failure to do so amounts to punishment without an adjudication of guilt. *See Hubbard*[], 399 F.3d at 166." *King v. County of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008).   In *King*, our Court of Appeals explained:

> In assessing the denial of medical care to a pretrial detainee, the inquiry is whether the denial was "imposed for the purpose of punishment or whether it [was] an incident of some other legitimate governmental purpose. *Bell v. Wolfish*, 441 U.S. 520 (1979).   That inquiry involves an indirect application of the Eighth Amendment deliberate indifference standard:   "the Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner,' without deciding whether the Fourteenth Amendment provides greater

protection." *Natale*, 31 F.3d at 581 (quoting *City of Revere*, 463 U.S. at 244); *see also Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (holding that "at a minimum the 'deliberate indifference' standard of *Estelle v. Gamble*, must be met").

*Id.* In other words, when evaluating inadequate medical care claims by pretrial detainees, courts must apply the Eighth Amendment's deliberate indifference standard as articulated by the Supreme Court in *Estelle v. Gamble*, but must view this inquiry in the context of the standard articulated in *Bell v. Wolfish*, which applies Fourteenth Amendment due process principles to pretrial detainees, rather than the cruel and unusual punishment standard. *Montgomery v. Ray*, 145 F. App'x 738, 740 (3d Cir. 2005) (vacating an order and remanding case where district court evaluated pretrial detainee's claim involving inadequate medical treatment under the same standards as Eighth Amendment claims, rather than Due Process Clause principles). In *Montgomery*, the Court of Appeals noted that,

> [T]he Eighth Amendment only acts as a floor for due process inquiries into medical and non-medical conditions of pretrial detainees. While "the due process rights of a [pre-trial detainee] are <u>at least</u> as great as the Eighth Amendment protections available to a convicted prisoner, *Hubbard*, 399 F.3d at 166 (citation omitted), the proper standard for examining such claims is the standard set forth in *Bell v. Wolfish*, . . . i.e., whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to an adjudication of guilt. *Hubbard*, 399 F.3d at 158.

*Montgomery*, 145 F. App'x at 740 (emphasis and brackets in original). In order to determine whether the challenged conditions of pretrial confinement amount to punishment, the Supreme Court of the United States has stated:

> [a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of the detention facility officials, that determination generally will turn on whether [it has] an alternative purpose . . . and whether it appears excessive in relation to [that] purpose . . . . Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition

is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court may permissibly infer that the purpose of the government action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Bell v. Wolfish*, 441 U.S. at 538-39 (citations, brackets, and internal quotations omitted).

The deliberate indifference standard under the Eighth Amendment requires the prisoner to show (1) a serious medical need, and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *see also Natale*, 318 F.3d at 582. The Court of Appeals for the Third Circuit has defined a serious medical need as (1) " 'one that has been diagnosed by a physician as requiring treatment[;]' " (2) " 'one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention[;]' " or (3) one "where the denial of treatment would result in the 'unnecessary and wanton infliction of pain,' or 'a life-long handicap or permanent loss[.]' " *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003) (quoting *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987).

Dr. Kubrin does not contest that Young's medical needs were serious for purposes of summary judgment, but rather focuses on the second prong of the *Estelle* inquiry. Similarly, the Court will assume, for purposes of deciding the summary judgment motion only, that Young's medical needs were serious.

The second element of the *Estelle* test requires a prisoner to show that prison officials acted with deliberate indifference to the prisoner's serious medical needs. *Natale,* 318 F.3d at 582. In order to find that state officials acted with deliberate indifference, a plaintiff must prove that the official knew of and disregarded an excessive risk to inmate health or safety. *Id*. (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). " 'Deliberate indifference' is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of

harm." *Andrews v. Camden Cnty.*, 95 F.Supp.2d 217, 228 (D.N.J. 2000) (citing *Farmer*, 511 U.S. at 837–38). Thus, "in order to survive a summary judgment motion, in which the movant argues that there is an absence of evidence to support [the plaintiff's] case, the plaintiff must point to some evidence beyond [his] raw claim that [defendant] was deliberately indifferent." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n. 2 (3d Cir. 2001) (citing *Celotex*, 477 U.S. at 325). In other words, the plaintiff must come forward with "some evidence 'that [defendant] knew or was aware of [the] risk [to plaintiff].' " *Id.*

In the case at bar, the undisputed summary judgment record indicates that Young was subjected to hours of therapeutic restraints while in the mental health unit at ACJ on at least ten occasions, and often for extended periods of time:

1) September 8, 2018, from 10:10 am – 9:31 pm;

2) September 16, 2018 (undocumented beginning time) until September 17, 2018 at 7:30 am;

3) September 19, 2018, from at least 3:25 pm – 9:25 pm;

4) September 26, 2018, from at least 6:15 pm until September 30, at 8:15 pm;

5) October 8, 2018, from at least 3:20 pm until October 9, 2018, at 7:30 am;

6) October 11, 2018, from at least 3:30 pm until October 15, 2018, at 4:20 am;

7) November 12, 2018, for an unknown period of time;

8) December 2, 2018, for an unknown period of time;

9) December 15, 2018, for an unknown period of time; and

10) December 17, 2018, for an unknown period of time.

P's Br. at p. 13 (ECF No. 122); *see also* Medical Record Excerpts (ECF No. 123).  Dr. Kubrin testified in her deposition that the therapeutic restraints could only be initiated by order of a psychiatric provider, and confirmed that she had ordered, continued, or discontinued the use of

therapeutic restraints for Young on seven occasions.  Dr. Kubrin testified that she ordered Young

to be restrained in the interest of his own well-being and survival,

> [W]e all wanted to keep our patients safe, and that was our intent.  None of us (mental health providers) were corrections people.  We were not in the business of providing punishment. . . .
>
> [B]eing restrained is psychologically . . . stressful.  On the other hand, it's much safer than ingesting sharp objects that could kill you. . . .
>
> [Young's] treatment was based on us trying to keep him safe[.]  Eating glass, batteries, plastic screws, inhalers . . . those are all potentially life threatening issues[.] So our first goal of treatment was that he be safe and alive.

Depo. of Kubrin, at pp. 23, 24, and 30.

According to Young, while in the five point restraints, he was lying naked on a bed with

a light and air vent over him, with his legs secured, spread eagle to the bed, his arms secured out

from his sides, and a strap over his chest.  Depo. of Young, at p. 17, lines 2-9.  He was given a

tarp-like blanket for covering, but it was not very effective because all his restraints had to be

visible to the staff at all times, which resulted in only his private areas being covered.  *Id*., at

lines 17-25.  Young described these conditions as "torture." *Id*. at lines 24-25.

Young has produced medical record evidence reflecting that on at least two occasions Dr.

Kubrin prospectively ordered that Young be placed in therapeutic restraints upon his return from

the hospital.  For example, on September 7, 2018, the day before Young was discharged from the

hospital, Dr. Kubrin ordered that Young be immediately placed in therapeutic restraints "upon

return from hospital."  He was then left in the restraints for over eleven hours.[5]   And then on

---

[5]      The Therapeutic Restraint Flow electronically signed by Susan Leri, RN on 9/8/2018, reflects that "5-point restraint already ordered by Dr. Kubrin upon return from hospital.  Client arrived on pad at 10:10 am."  ECF No. 123 at p. 4. "[Young] was brought to 5C in a restraint chair and placed in 5 point restraints, in cell one, per Dr. Kubrin's order upon return from hospital. Client was cooperative and no injuries noted.  .  . Client asked this writer why he was being placed in restraints and this writer informed him that it was for his safety and ordered by

September 12, 2018, Dr. Kubrin again ordered Young to be placed in therapeutic restraints prospectively upon his discharge from the hospital:

> Q:  So although the 16th was a Sunday and you did not work, you had a prospective order in place for the five-point restraints upon return from the hospital; is that correct?
>
> A:  That's -yeah, that is correct because, in fact we had in a period of less than a week, glass – eaten glass and screws, so I wanted him to be seen by a provider, a mental health provider to reassess him on his return.  Because he could often return – you know, he could return at 11:00 at night, and there's no mental health provider in the building, and so that was like a way to guarantee that he's going to be reassessed before he is free to eat more glass.

Depo. of Kubrin, at p. 34, lines 6-18.  According to Young there was no need for restraints when he was returned from the hospital, as each time he was "calm, subdued, and incident done and over with."  Amended Complaint, at ¶ 15.

Young avers that he complained verbally to Dr. Kubrin about being placed in the restraints and she replied, "well if you learn to behave you won't go thru this."  Amended Complaint, at ¶ 9.  On another occasion, according to Young, in response to his complaints about being placed in restraints, Dr. Kubrin told him, "Well I have to show these guys that you don't just get away with swallowing objects and causing problems without consequences.  You cost us a lot of money going to the hospital for days, what you think we would do?"  *Id*. at ¶ 18.  And Young avers that when asked why he was placed in five-point restraints prospectively and without being examined upon his return to ACJ from the hospital, Dr. Kubrin told him, "I can tie you down as punishment when I want to no matter if you been calm and cool for days.  I don't need to see you first all I have to do is write the orders like I did." *Id*. at ¶ 19.

Dr. Kubrin contends that she ordered Young to be placed in therapeutic restraints to prevent him from further harming himself and that she was motivated solely for a desire to keep

Dr. Kubrin." *Id.* at p. 20.

him safe from future harm, not punish him.  According to Dr. Kubrin, the wanton course of conduct would have been to leave Young at the risk of self-destruction.

Young argues that the medical records and other summary judgment evidence present a basis for a jury to conclude that his medical treatment amounted to punishment prior to adjudication of guilt as Dr. Kubrin was deliberately indifferent to his serious medical needs by ordering that he be placed in restraints, often for extended periods of time. For example, he was kept in restraints for hours and days at a time, even when the nursing notes indicated that he was "calm and cooperative throughout the shift."  Moreover, in his deposition, Young testified that after he left the ACJ mental health unit and was returned to RHU, he was not placed in restraints,

> After I left that unit and went to RHU on administrative custody status I was in the RHU, I ate a battery in front of them, said I ate it and nothing happened.  They didn't tie me down, they didn't do any of that.  They didn't even call mental health because mental health, Dr. Kubrin and several nurses on the mental health 5C pod told them I didn't need to be down there; and what they were doing was wrong by sending me down there and onto the mental health unit when I was causing problems related to the prison and not mental health.

Depo. of Young, at p. 31, lines 21-25; p. 32, lines 1 – 7.

Clearly, genuine disputes of material fact exist as to Dr. Kubrin's reasons for ordering the therapeutic restraints. The Court, however, may not weigh evidence, determine credibility, or resolve factual disputes at the summary judgment stage.  *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

Construing the summary judgment evidence of record in the light most favorable to Young, the Court concludes that a reasonable jury could find that that the medical treatment received by Young amounted to punishment prior to adjudication of guilt in violation of the

Fourteenth Amendment because a reasonable jury could conclude from the evidence of record that Dr. Kubrin was deliberately indifferent to his serious medical needs.  Accordingly, summary judgment will be denied on this claim.

### 2.      State Law Claim – Intentional Infliction of Emotional Distress

Young must establish the following to prove a claim of intentional infliction of emotional distress: 1) the conduct must be extreme in degree and outrageous in character; 2) it must be intentional or reckless; 3) it must cause emotional distress; and 4) the distress must be severe. *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979) (citing Restatement (Second) of Torts § 46); *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. Ct. 1997)). With regard to the element of outrageous conduct, Pennsylvania law requires that a plaintiff allege conduct that is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (quoting *Buczek v. First Nat'l Bank of Miflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)). Because the actions of Dr. Kubrin are in dispute, the intentional infliction of emotional distress claim cannot be resolved by summary judgment.

### 3.      Punitive Damages

Under § 1983, punitive damages may be awarded only when the defendant's conduct is "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Coleman v. KKA*, 87 F.3d 1491, 1497 (3d Cir. 1996). And Pennsylvania law provides that punitive damages are only appropriate in cases of "conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of

others" or "conduct which is malicious, wanton, reckless, willful or oppressive." *Feld v.*
*Merriam*, 485 A.2d 742, 747-48 (Pa. 1984).

Dr. Kubrin requests to have Young's request for punitive damages dismissed contending
"that any medical judgment used by Dr. Kubrin in deciding to place Plaintiff in restraints does
not establish wanton behavior or reckless indifference as a matter of law." Br. at p. 17. Again,
because the actions of Dr. Kubrin are in dispute, the decision whether to award punitive damages
is best left to the factfinder.

### 4.    Compensatory Damages

In his prayer for relief in the Amended Complaint, Young states he is seeking
$400,000.00.  Rule 8 of this Court's Local Rules provides that no party shall set forth in a
pleading a specific dollar amount of unliquidated damages.  Dr. Kubrin requests that Young's
claim for a specific amount of compensatory damages be dismissed.  Young consents to the
request to have his request dismissed.  Resp. at p. 20 (ECF No. 122).  Therefore,  the request to
dismiss the claim for specific amount of compensatory damages will be granted.

## V.    Conclusion

For all these reasons, the Motion for Summary Judgment filed by Defendant Doctor Gail
Kubrin will be denied. Defendant's request to dismiss Plaintiff's punitive damages claim will be
denied.  Defendant's request, without objection, to dismiss Plaintiff's First Amendment claim
and claim for specific compensatory damages will be granted.

An appropriate Order follows.

Dated:  November 2, 2022                            s/ Cynthia Reed Eddy
                                                   Cynthia Reed Eddy
                                                   United States Magistrate Judge


cc:    All Counsel of Record
       (via ECF electronic notification)